J. JONES, Justice,
concurring in the result of Part II, specially concurring in Part III, and concurring in Parts IV and V.
I concur in the result reached by the Court in Part II — that I.C. § 39-1392b applies in this case — but would not necessarily agree that the statute prohibits discovery in all instances where a physician alleges a peer review proceeding is being misused. I agree with the Court’s conclusion in Part III that the Court does not have the authority to modify an unambiguous statute, but I do not necessarily believe that the Legislature has the last word with regard to the subject of evidentiary privileges. I concur in Part IV and Part V.
The Court correctly concludes that the privilege contained in I.C. § 39-1392b applies to all types of peer review proceedings, including hospital credentialing and disciplinary proceedings. According to I.C. § 39-1392f, peer review includes activities of medical staff to improve “the care of patients in the hospital,” as well as the “quality and necessity of care provided to patients.” Plaintiffs’ contention that the privilege only applies to medical malpractice claims is untenable.
As with any privilege, the peer review privilege must be strictly construed and applied. As the U.S. Supreme Court stated in Jaffee v. Redmond:
When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rale. Exceptions from the general rale disfavoring testimonial privileges may be justified, however, by a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.
518 U.S. 1, 9, 116 S.Ct. 1923, 1928, 135 L.Ed.2d 337, 344 (1996) (quotation marks and citations omitted). The Court continued, “Our cases make clear that an asserted privilege must also ‘serv[e] public ends.’” Id. at 11, 116 S.Ct. at 1929, 135 L.Ed.2d at 345. If the asserted privilege is being misused, such as to serve some interest not within the public policy ends for which it was intended, the privilege should not apply.
The Legislature made the following public policy statement with respect to the. peer review privilege:
To encourage research, discipline and medical study by certain health care organizations for the purposes of reducing morbidity and mortality, enforcing and improving the standards of medical practice in the state of Idaho, certain records of such health care organizations shall be confidential and privileged as set forth in this chapter.
I.C. § 39-1392. The Legislature is not the only branch of Idaho’s government that has adopted a public policy favoring the protec *899 tion of peer review proceedings from public disclosure in order to facilitate the frank exchange of information. This Court has adopted its own privilege designed to protect the confidentiality of the proceedings of in-hospital medical committees. Rule 519 of the Idaho Rules of Evidence prevents the disclosure of confidential communications “made in connection with a proceeding for research, discipline, or medical study ... for the purpose of reducing morbidity and mortality, or improving the standards of medical practice for health care.” I.R.E. 519(a)(4). The proceedings at issue in this ease are clearly within the contemplated coverage of both the legislative enactment and the judicial rule.
However, like any privilege, the party invoking the privilege must make an initial showing that the proceeding at hand is within the intended coverage of the privilege. The person challenging the privilege must then make a credible showing that the privilege does not apply. That may be done by showing that the person or entity claiming the privilege does not qualify under the terms of the legislative enactment or judicial rule, but it may also be done by making a credible showing that the privilege is being misused. As stated in 81 Am.Jur.2d Witnesses § 537 (2011):
Such statutorily created privilege will be narrowly construed by the courts. In construing the peer-review privilege granted to healthcare providers, a court must balance privilege against a plaintiffs right to due process and the judicial need for the fair administration of justice. The view has been followed that the broad privilege granted to a hospital by a state’s peer review law extended to any and all matters related to the peer-review process pursuant to which a physician’s staff privileges were revoked, subject to the physician’s right to conduct discovery for the limited purpose of investigating the committee members’ good faith, malice, and reasonable knowledge or believe in order to carry his burden in opposing their qualified immunity.
Public policy dictates that when peer review proceedings are being conducted in good faith, all documents and proceedings should be exempt from disclosure. However, if it can be shown by credible evidence by a physician aggrieved by the proceeding that it is not being conducted in good faith, such as for anti-competitive objectives, the privilege simply does not apply. The privilege is not intended to apply to bad faith proceedings. Rather, as the Legislature has stated in I.C. § 39-1392, it is intended for “the purposes of reducing morbidity and mortality, enforcing and improving the standards of medical practice in the State of Idaho.” Advancement of anti-competitive practices or other improper agendas does not serve such purposes.
An analogy to the federal act pertaining to peer review, or “professional review actions,” is apt. The Health Care Quality Improvement Act of 1986 was enacted for the purpose of “encouraging good faith professional review activities.” Pub.L. No. 99-660, 100 Stat. 3743. The Act is codified beginning at 42 U.S.C. § 11101. The Act provides broad immunity from damage claims for persons and entities conducting professional review actions. 42 U.S.C. § 11111(a). However, in order to obtain such immunity, the actions of a professional review body must meet all of the standards specified in 42 U.S.C. § 11112(a). That subsection provides:
(a) In General — For purposes of the protection set forth in [42 U.S.C. § 11111(a)], a professional review action must be taken—
(1) in the reasonable belief that the action was in the furtherance of quality health care,
(2) after a reasonable effort to obtain the facts of the matter,
(3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
(4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting [specified requirements for notice and hearing],
A professional review action shall be presumed to have met the preceding standards necessary for the protection set out in [42 U.S.C. § 11111(a) ] unless the pre *900 sumption is rebutted by a preponderance of the evidence.
It seems to logically follow that, if a peer review panel’s immunity from a damage claim is lost for failure to pursue a peer review action in the furtherance of quality health care, the immunity from disclosure of such panel’s proceedings should also be lost for such a failure. Where a proceeding is being conducted, not for the purpose of improving the quality of health care, but, rather, for the purpose of eliminating competition, conducting a vendetta, or some other reason not embodied within the public policy supporting the privilege, it should be lost.
Of interest is the fact that the Hospital’s Fair Hearing Plan specifically adopts the provisions of the Health Care Quality Improvement Act. Section 22 of Chapter XII of the Medical Staff Policy & Plans states: “This Fair Hearing Plan will be construed, and at all times will be consistent with, the Health Care Quality Improvement Act and its implementing regulations (HCQIA), and in the event of a conflict, HCQIA will control.”
I would hold that the Plaintiffs could overcome the privilege with a credible showing that the Hospital was using the peer review proceedings for an improper purpose, such as the Plaintiffs allege. The problem for Plaintiffs is that they have not made a credible showing that such is the case. The Plaintiffs allege that the peer review proceedings were merely a ruse to stifle competition by eliminating Dr. Verska as a competitor against the Hospital’s in-house spinal surgery group. Plaintiffs have failed to present any credible evidence to support that contention. Nor has it been shown that the Hospital did not substantially comply with the standards adopted by the Hospital for its Fair Hearing Plan, specifically the HCQIA requirements.
On the other hand, the record shows that the proceedings were instituted for valid reasons. It would not have been responsible for the Hospital to have ignored the fact that Dr. Verska had had his hospital privileges at St. Luke’s Regional Medical Center curtailed. Subsequent review of the doctor’s charts indicated the need for further study. The fact that he had five cases reported to the National Practitioner Data Bank could not have been properly disregarded by the Hospital. It certainly appears that the proceeding was initiated and pursued in “furtherance of quality health care.”
The Plaintiffs allege that information was improperly disclosed by at least one peer review panel member involved in the proceedings. It is not clear whether the Plaintiffs asserted to the district court that the privilege had been waived by virtue of that fact.[2] Certainly a party asserting a privilege can waive it by voluntary disclosure, as we have provided in I.R.E. 510:
A person upon whom these rules confer a privilege against disclosure of the confidential matter or communication waives the privilege if the person or the person’s predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication. This rule does not apply if the disclosure is itself a privileged communication.
Although I.R.E. 510 deals specifically with waiver of privileges provided for in the Idaho Rules of Evidence, there is no reason why we should not apply it equally to legislatively-created privileges. However, the Plaintiffs have failed to raise this particular waiver issue on appeal. Presumably, they can do so on remand.
Because the Plaintiffs have failed to make a sufficient showing that the privilege should not apply in this case, the district court correctly ruled with regard to the Plaintiffs’ request to conduct discovery and this Court reached the correct conclusion in affirming that holding.
With regard to Part III of the opinion, I agree that the Court cannot modify an unambiguous statute. Our job is to determine whether a legislatively-created privilege applies in a particular fact situation. However, I would observe that the Court has inherent *901 constitutional powers to control court procedures, including the conduct of discovery, and to implement rales regarding the admissibility of evidence, including the power to establish privileges in furtherance of public policy objectives. Indeed, the Court has established a specific privilege entitled “Hospital, in-hospital medical staff committee and medical society privilege.” I.R.E. 519. That privilege covers much of the same ground as the legislatively-enacted privilege. Oddly, neither party has cited I.R.E. 519 to the Court. Because I.C. § 39-1392b does not appeal- to conflict with the Court’s rule, application of that statute in this proceeding is not inappropriate.

. Plaintiffs do claim on appeal that the privilege was waived, but their argument is premised upon I.C. § 39 — 1392b(f). The Court correctly disposes of that contention in Part IV of the Opinion.